UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-30-12
```

MOHAMMED A. TIPOO,

                                    Plaintiff,

        -v-

COHEN & SLAMOWITZ, LLP,

                                    Defendant.

No. 11 Civ. 6046 (RJS)
MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

        Plaintiff initiated this action on August 29, 2011 by filing a complaint alleging violations

of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").  (Doc. No. 1.)

Plaintiff amended his complaint on September 27, 2011.   (Doc. No. 3.)   In his amended

complaint, Plaintiff alleges that Defendant, in seeking to collect a debt that Plaintiff allegedly

owed pursuant to a state court judgment, left a voice message for Plaintiff that failed to disclose,

pursuant to 15 U.S.C. § 1692e(11), that Defendant was a "debt collector," that it was "attempting

to collect a debt[,] and that any information obtained [would] be used for that purpose."  (*Id.*

¶¶ 9–17.)

        On November 18, 2011, after Plaintiff filed a Notice of Acceptance of Defendant's Rule

68 Offer of Judgment, the Clerk of Court issued a Rule 68 Judgment against Defendant "in the

amount of $1,200.00" and ordered that "[a]ccrued costs, disbursements[,] and reasonable

attorney's fees [were] to be decided by the Court either by motion or stipulation." (Doc. No. 12.)

Before the Court are now two related cross-motions.  The first, filed by the Law Offices of

Shimshon Wexler, PC ("Wexler"), on January 1, 2012, seeks (1) to withdraw as Plaintiff's

counsel pursuant to Local Civil Rule 1.4 and (2) to obtain a charging lien in the amount of $1,800, representing the amount owed pursuant to an alleged agreement between Wexler and Defendant. (Doc. No. 17 ("Wexler Mem.").) The second motion, filed by Defendant on January 18, 2012, seeks to enforce a settlement agreement – negotiated by Wexler on behalf of Plaintiff and allegedly entered into on December 2, 2011 – and to compel Plaintiff and Wexler to execute "settlement documents."[1] (Doc. No. 20.) The Court considers the motions fully briefed. For the reasons that follow, the Court GRANTS Wexler's motion in its entirety and GRANTS in part and DENIES in part Defendant's cross-motion.

## I.   BACKGROUND

Wexler asserts that after the Court entered its Rule 68 judgment against Defendant, he and Defendant's attorney, Wendy Shepps, negotiated an agreement with respect to Wexler's attorney's fees and costs. (Reply Decl. of Shimshon Wexler, dated Jan. 25, 2012, Doc. No. 23 ("Wexler Reply"), ¶ 8.) According to Wexler, on December 2, 2011, he and Shepps "agreed by telephone, with [Wexler] sending a confirmation email minutes after the telephone conversation concluded, that the entire case would be settled at $3,000 [–] meaning that attorney's fees and costs would be settled at $1,800." (Wexler Mem. at 1; see also Wexler Reply Exs. C, D (indicating that the parties negotiated for attorney's fees and costs and came to a $3,000 settlement figure).) By contrast, Defendant asserts, without any further explanation, that by agreeing to "settle the case" and "execute settlement documents" following the entry of the Rule 68 Judgment, the parties somehow "effectively voided the acceptance of the Offer of Judgment." (Decl. of Wendy B. Shepps, dated Jan. 18, 2012, Doc. No. 21 ("Shepps Decl."), ¶ 6.)

---

[1] Defendant provides no further description or explanation of the "settlement documents" referred to in its motion. (Doc No. 22 ("Def.'s Mem.") at 2, 4.) Moreover, although Defendant also requests "such other and further relief that this Court deems just and proper," it does not suggest what such "other and further relief" the Court might bestow. (*Id.*)

2

On December 8, 2011, after the settlement agreement had already been consummated, Shepps forwarded to Wexler for Plaintiff's review and signature a "General Release," which would have released Defendant from all liability from, *inter alia*, any and all causes of action, claims, or suits involving Plaintiff and Defendant. (*See* Wexler Mem. at 1; Shepps Decl. ¶ 9; Wexler Reply Ex. E.) Allegedly, despite having already reached an agreement regarding the $3,000 owed for the combined $1,200 judgment and $1,800 in costs and attorney's fees, Wexler sought the agreement in an apparent attempt to settle the underlying debt Plaintiff owed to Defendant. (*See* Wexler Reply ¶ 15–16; Shepps Decl. ¶ 8–9.) There is no evidence that Plaintiff ever signed the General Release or that Plaintiff and Defendant ever reached an amended or second agreement to settle the underlying debt.

In fact, on December 8, 2011, when Wexler informed Plaintiff of the December 2 settlement, Plaintiff expressed displeasure that he would receive only the $1,200 pursuant to the Court's Rule 68 Judgment and not a vacatur of the underlying state court judgment upon which Defendant had been attempting to collect. (Wexler Mem. at 1–2.) Allegedly, Plaintiff then indicated his twin desires to revoke his prior acceptance of the Offer of Judgment and "release [Wexler] from this case" unless he is "able to settle [the underlying account] with [Defendant] (the judgment creditor) by paying [$]0 and . . . get the statutory damages from them as well." (*Id.* at 3.) On December 21, 2011, Plaintiff also allegedly wrote to Wexler, stating that he "could amend the original complaint and compel [Defendant] to cancel the debt and vacate the judgment voluntarily or go to the Queens court and put in the paperwork to vacate the judgment. Failing that I want you to get off the case with absolutely no rights to any future settlement. I will absolutely not settle this without cancellation of this alleged debt." (*Id.* at 4.) According to Wexler, his retainer agreement with Plaintiff clearly indicated that his representation would "not

extend to any other matters aside from suing for violations of the [FDCPA]." (*Id.* at 2.) To date, Wexler has not received any payment for accrued costs, disbursements, or attorney's fees. (*See id.* at 4.)

## II.   WEXLER'S MOTION TO WITHDRAW AS COUNSEL AND FOR A CHARGING LIEN

### A.  Withdrawal as Counsel

Under Local Rule 1.4, an "attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court and may not withdraw from a case without leave of the Court granted by order." Local Civil Rule 1.4.  Here, Wexler asserts that he should be granted leave to withdraw as the attorney of record because he can satisfy three different provisions of Rule 1.16(c) of New York's Rules of Professional Conduct.[2]  For the reasons that follow, the Court agrees.

Rule 1.16(c) makes clear that, unless otherwise ordered by a tribunal, a lawyer "may withdraw from representing a client when," *inter alia*:

> (1) withdrawal can be accomplished without material adverse effect on the interests of the client;
>
> * * *
>
> (5) the client deliberately disregards an agreement or obligation to the lawyer as to expenses or fees; [and]
>
> * * *
>
> (10) the client knowingly and freely assents to termination of the employment[.]

N.Y.R. of Prof'l Conduct 1.16(c) (2011).  Here, because the Court has dismissed Plaintiff's case with prejudice and entered a Rule 68 Judgment against Defendant for $1,200, there is little left for Plaintiff to prosecute.  Therefore, as Plaintiff will not be the worse off should Wexler withdraw, Wexler may withdraw under Rule 1.16(c)(1).

---

[2] Defendant does not oppose Wexler's motion to withdraw as counsel. (*See* Shepps Decl. ¶ 2.)

Additionally, Wexler may withdraw as counsel under Rule 1.16(d)(5).  The FDCPA explicitly provides that "in the case of any successful action to enforce . . . liability," a defendant shall pay "the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).  It is undisputed that even though the parties agreed on December 2, 2011 to settle the case for $3,000, inclusive of the $1,200 judgment already entered against Defendant and $1,800 for attorney's fees and costs (Wexler Mem. at 1; *see* Wexler Reply Exs. C, D), neither Plaintiff nor Wexler have received payment (Wexler Reply ¶ 19; *see* Wexler Mem. at 4).  However, even if Plaintiff *were* to receive payment, Plaintiff has specifically indicated that unless Wexler could secure a vacatur of the underlying state court judgment against Plaintiff – an undertaking outside the scope of the representation – Wexler would have "absolutely no rights" to settlement funds.  (*Id.*)  Thus, because Plaintiff "deliberately disregards" the Rule 68 Judgment already entered by seeking to revoke his acceptance of it and the settlement subsequently entered into by Wexler on his behalf, Wexler may withdraw as counsel under Rule 1.16(d)(5).  *See* N.Y.R. of Prof'l Conduct 1.16(d)(5).

Finally, as noted above, Plaintiff also indicated his desire to terminate Wexler as the attorney of record in this action.  (Wexler Mem. at 3–4.)  Plainly, such a step allows Wexler to withdraw as counsel under Rule 1.16(d)(10).

Therefore, because Wexler meets at least one of the grounds for permissive withdrawal under Rule 1.16(c) of the New York Rules of Professional Conduct, the Court GRANTS Wexler's motion to withdraw as the attorney of record under Local Rule 1.4.

## B.  Charging Lien

Because the Court relieves Wexler as the attorney of record in this action, it next considers whether to grant him a charging lien under New York Judiciary Law Section 475

("Section 475"). *See Levy v. Laing*, 843 N.Y.S.2d 542, 544 (App. Div. 1st Dep't 2007) (explaining that the charging lien is one of the available remedies for an attorney discharged without cause); *cf.* Local Rule 1.4 (instructing an attorney seeking to withdraw as counsel to indicate in his motion whether or not he asserts a retaining or charging lien).

Under Section 475, which also "governs attorneys' charging liens in federal courts sitting in New York," *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998), an attorney's charging lien "upon his client's recovery is a vested property right created by law and not a priority of payment," *In re Washington Square Slum Clearance*, 157 N.E.2d 587, 589 (N.Y. 1959). In considering whether to grant a charging lien under Section 475, the Court is to liberally construe the statute "in aid of the object sought by the legislature, which was to furnish security to attorneys" and to protect them against "the knavery of their clients." *Itar-Tass Russian News Agency*, 140 F.3d at 449–50 (internal quotation marks omitted).

Here, as noted above, Wexler and Shepps agreed that, in addition to the $1,200 owed to Plaintiff as a result of the Court's Rule 68 Judgment, Defendant would pay $1,800 in attorney's fees and costs. However, Wexler has yet to receive payment, and Plaintiff has indicated that he has no intention of paying Wexler from the settlement funds.[3] In light of the liberal construction given to Section 475, the Court GRANTS Wexler's motion for a charging lien in the amount of $1,800.

---

[3] The Court received no motion or stipulation regarding accrued costs, disbursements, and attorney's fees prior to the deadline for filing such a motion. *See* Fed. R. Civ. P. 54(d)(2)(B) (noting that a motion for attorney's fees must be filed "no later than 14 days after the entry of judgment"). However, it appears that Wexler believed that he had negotiated an enforceable agreement with Defendant on December 2, 2011 – prior to the deadline for filing a motion for attorney's fees – thereby obviating the need to otherwise file such a motion. Therefore, the Court will deem Wexler to have made a timely motion for attorney's fees. *See* Fed. R. Civ. P. 6(b)(1)(B) (allowing a Court to extend the deadline for filing a motion "if the party failed to act because of excusable neglect").

### III.   DEFENDANT'S MOTION TO ENFORCE THE SETTLEMENT

In its brief in support of its motion, Defendant requests that the Court enforce "the settlement entered into with [P]laintiff on December 2, 2011" and direct Plaintiff and Wexler "to execute the settlement documents resolving this matter." (Def.'s Mem. at 2, 4.) However, nowhere in its brief does Defendant identify or explain the "settlement documents" to which it refers. The Court can only assume that by "settlement documents," Defendant refers to the unsigned General Release sent to Wexler on December 8 after the parties had already reached a settlement on December 2. As noted above, the General Release would have released Defendant from all liability from, *inter alia*, any and all causes of action, claims, or suits involving Plaintiff and Defendant "from the beginning of the world to the day of the date of [the General Release]." (Wexler Reply Ex. E.)

Although the parties agree that they reached a settlement of $3,000 on December 2, the parties appear to disagree as to whether signing the General Release was a condition precedent to Defendant's actual release of funds to Wexler. (*See* Shepps Decl. ¶ 16.) However, the Rule 68 Judgment did not require Plaintiff to sign a General Release prior to the disbursement of $1,200 or the negotiation of reasonable costs and attorney's fees, and as Wexler rightly notes, "[n]o additional consideration was ever given entitling [D]efendant to a [G]eneral [R]elease." (Wexler Reply ¶ 18); *see also Care Travel Co., Ltd. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 991 (2d Cir. 1991) (explaining that without "new consideration," there is no new agreement, and the terms of the original agreement remain in effect). Although Wexler's confirmation email indicates that "the entire case will be settled for $3,000" (Wexler Reply Ex. D), plainly, "the entire case" refers to this action only and the remainder of what could be negotiated in this action following the Rule 68 Judgment – costs, disbursements, and reasonable attorney's fees – and not

7

any and all claims that Plaintiff may have against Defendant "from the beginning of the world" to the date of an unsigned release, whether those claims relate to conduct at issue in this action or not (*see id.* Ex. E).   Although the parties were certainly free to stipulate as to costs, disbursements, and reasonable attorney's fees, it is elementary that they could not have stipulated as to "effectively void the acceptance of the Offer of Judgment" and the ultimate binding judgment of the Court. (*See* Shepps Decl. ¶ 6.)  In any event, the Court declines to void its own judgment.

Therefore, because there was a valid contract as to costs, disbursements, and reasonable attorney's fees, Defendant's motion is granted in part and denied in part.  IT IS HEREBY ORDERED that Defendant pay to Plaintiff $3,000, consistent with the settlement that the parties entered into on December 2, 2011.  After payment has been transferred, Wexler can then recover by exercising the above-awarded charging lien in the amount of $1,800.  However, as noted above, because the General Release was not part of the settlement entered into on December 2, the Court DENIES Defendant's motion for the Court to direct Plaintiff and Wexler to execute the document.

* * *

The Clerk of Court is respectfully directed to terminate the motions located at Doc. Nos. 17 and 20.

SO ORDERED.

Dated:          May 30, 2012
                New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

8